## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Teddy A. Korf, | COURT FILE NO. _____ |
| Plaintiff, | (Medical Malpractice) |
| v. | **COMPLAINT AND** |
| | **DEMAND FOR JURY TRIAL** |
| Tom Roy, Commissioner, Minnesota Department of Corrections, in his official capacity;  Jane Doe 1-5, nurses at the Minnesota Dept. of Corrections, individually and in their official capacities; Kathleen Konetzko, RN, CNP individually and in her official capacity; Ken Denman, R.N. CNP;  Khin Aye, M.D.; and Correctional Medical Services, Inc., | |
| Defendants. | |

Plaintiff Teddy A. Korf, as and for his Complaint against Defendants:  Tom Roy sued in his official capacity as Commissioner, Minnesota Department of Corrections; Jane Doe 1-5, nurses at the Minnesota Department of Corrections, individually and in their official capacities; Kathleen Konetzko, RN, CNP, individually and in her official capacity; Ken Denman, R.N., CNP; Khin Aye, M.D.; and Correctional Medical Services, Inc., alleges and states as follows:

This action is brought pursuant to Title 42 U.S.C. § 1983 for the purpose of having declared and adjudged unconstitutional, the actions of Defendants with respect to the inadequate medical treatment provided to Plaintiff during his incarceration; and a state law tort claim for medical negligence in the care and treatment of Plaintiff.

## JURISDICTION

The jurisdiction of this court is invoked pursuant to the provisions of 42 U.S.C. § 1983, 28 U.S.C. § 1983, 28 U.S.C. § 1331 (b) which presents a federal question and 28 U.S.C. § 1343 (a)(3) brought to address the deprivation under the color of state law of rights, privileges and immunities, secured by the Constitution and laws of the United States. The rights herein sought to be redressed are the rights guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States as hereinafter more fully appears. The Court has jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

Jurisdiction of this Court is invoked pursuant to Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. § 1988 and 42 U.S.C. § 2000, which authorize the award of attorney's fees and costs to prevailing parties pursuant to 42 U.S.C. § 1983.

## VENUE

Venue is proper in this United States Federal District pursuant to the provisions of Title 28 U.S.C. § 1391(b)(2) in that this is a civil action wherein jurisdiction is not founded solely on diversity of citizenship; the Plaintiff herein was incarcerated with the Minnesota Department of Correction Facility in St. Cloud, Minnesota, at all times relevant herein to this Complaint, and where a substantial part of the events and omissions giving rise to the claim occurred within the district.

## EXHAUSTION

Plaintiff Teddy Korf was released from the Department of Corrections to supervised release on August 26, 2009. He completed the terms of supervised release

on January 15, 2011, and was discharged from the Department of Corrections, and accordingly, is not subject to the exhaustion requirement.

## PARTIES

1.  Plaintiff Teddy Korf was incarcerated by the State of Minnesota, Department of Corrections, in the Minnesota Correctional Facility - St. Cloud, State of Minnesota, (hereinafter "MCF-SCL") during the events described herein under offender identification number:        , at 2305 Minnesota Boulevard S.E., St. Cloud, Minnesota.

2.  Under Minnesota state law, Defendant Minnesota Department of Corrections is responsible for the policies, procedures, and practices implemented by its various agencies, agents, departments, employers, and for injuries occasioned thereby.

3.  Defendant Tom Roy is the Commissioner of the Minnesota Department of Corrections. He is sued herein in his official capacity as chief executive of the Minnesota Department of Corrections.   At all times material hereto, the Commissioner was responsible for the operation of all Minnesota correctional facilities, including MCF-SCL, and as such had jurisdiction and control of the government, administration, disposition, discipline of the staff, including medical staff, and inmates thereof. In his official capacity as chief official of the State of Minnesota Department of Corrections he had overall responsibility for ensuring adequate medical staffing and training that directly affected plaintiff's ability to obtain adequate medical care, including the provision of constitutionally adequate medical care.

4.    Defendant Roy in his official capacity, caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at MCF-SCL. He has, therefore, directly and proximately caused, and will continue to cause in the future, many of the damages, injuries and violations set forth below.

5.    Upon information and belief, Kathleen Konetzko, RN, CNP, and Jane Doe 1-5, were nurses employed by the Minnesota Department of Corrections, including MCF-SCL, and as such were responsible for the care and treatment of the inmate at MCF-SCL at all times relevant to the Complaint herein.  As such, they have each caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practice that prevail at MCF-SCL , as described below with regard to the refusal to provide or implement timely diagnosis and treatment of serious physical disease and medical conditions.   They have, therefore, directly and proximately caused, and will continue to cause in the future, the damages, injuries and violations of rights set forth below.

6.    The identity of Jane Doe 1-5, upon information and belief, nurses at MCF-SCL, is unknown due to illegible handwriting in the Department of Corrections Progress Notes.

7.    Kathleen Konetzko, RN, CNP, upon information and belief an employee of Minnesota Department of Corrections, in addition to the duties and responsibilities alleged in paragraph 11, was responsible for the diagnosis,

treatment and care of the inmates, including Plaintiff Teddy Korf, at MCF-SCL at all times relevant to the Complaint herein.  As such, she has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practice that prevail at MCF-SCL, as described below with regard to the refusal to provide or implement timely diagnosis and treatment of serious physical disease and medical conditions.  She has, therefore, directly and proximately caused, and will continue to cause in the future, the damages, injuries and violations of rights set forth below.

8.    Upon information and belief Correctional Medical Services, Inc. ("CMS") was a foreign, for-profit healthcare agency, specializing in providing medical staffing to correctional facilities, and was contracted by the Minnesota Department of Corrections facility at MCF-SCL to provide healthcare services for inmates.  As such CMS was responsible for the diagnosis, care and treatment of the inmates, including Plaintiff Teddy Korf, at MCF-SCL at all times relevant to the Complaint herein.  As such, it has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practice that prevail at MCF-SCL, as described below with regard to the improper diagnosis and treatment of a mental health condition, and the refusal to provide or implement timely diagnosis and treatment of serious physical disease and medical conditions.  It has, therefore, directly and proximately caused, and will continue to cause in the future, the damages, injuries and violations of rights set forth below.

9.     Upon information and belief, Correctional Medical Services, Inc. provided healthcare services to Plaintiff while incarcerated at MCF-SCL between June 4, 2007 and July 1, 2007, through its employees, agents and ostensible agents; including, but not limited to Ken Denman, nurse practitioner, and Dr Khin Aye.

10.     Upon information and belief, Defendant Ken Denman, RN, CNP, was employed as a contract nurse practitioner for mental health care at MCF-SCL, and as such was responsible for the diagnosis, treatment and care of the inmates at MCF-SCL at all times relevant to the Complaint herein.  As such, he has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practice that prevail at MCF-SCL, as described below with regard to the refusal to provide or implement timely diagnosis and treatment of serious physical and mental health disease and medical conditions.  He has, therefore, directly and proximately caused, and will continue to cause in the future, the damages, injuries and violations of rights set forth below.

11.     Upon information and belief, Defendant Dr. Khin Aye was employed as a contract physician practicing at MCF-SCL and was responsible for the diagnosis, treatment and care of the inmates at MCF-SCL at all times relevant to the Complaint herein.  As such, he has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practice that prevail at MCF-SCL, as described below with regard to the refusal to provide or implement timely diagnosis and treatment of serious physical disease and medical conditions.  He

has, therefore, directly and proximately caused, and will continue to cause in the future, the damages, injuries and violations of rights set forth below.

12.     On June 4, 2007, Defendant Ken Denman provided medical care and services to Plaintiff at MCF-SCL, including performing a mental health assessment, and prescribing medications.

13.     On June 11, 2007, Defendant Ken Denman provided additional medical care and services to Plaintiff at MCF-SCL, including obtaining a mental health history and prescribing of additional medication, including Tegretol.

14.     All of the above-referenced Defendants have acted and continue to act under the Color of State law at all times relevant to the Complaint herein.

15.     Plaintiff sues all public employees both in their official and individual capacities.

### **FACTS**

16.     Plaintiff was placed in the custody of the Minnesota Department of Corrections on June 4, 2007, and was confined to a correctional facility in St. Cloud, Minnesota, MCF-SCL.

17.     Upon admission to MCF-SCL, Plaintiff was taking the following medications: Wellbutrin XL 300 mg, Paxil CR 25 mg, and Trazadone 100 mg daily.  His health screening document notes a history of serious depression in January 2007, after "coming off drugs," and notes that he had a history of psychological care in January 2007 for an "assessment for depression."  Plaintiff had no history of bi-polar disorder, or mania.

7

18. On June 4, 2007, Defendant Ken Denman, CNP wrote orders for Plaintiff for Paxil 20 mg every day, Bupropion 200 mg every day, and discontinuation of Trazodone.

19. An initial psychiatric evaluation was performed by Defendant Denman on June 11, 2007, who documented no psychiatric history for Plaintiff preceding his arrest, but reported anxiety and depression following his arrest in November 2006.

20. On June 11, 2007, Defendant Denman wrote orders for Plaintiff to begin taking the medication Tegretol, 20 mg two times per day. Defendant Denman also wrote orders for Plaintiff to decrease Paxil to 40 mg every day, and to discontinue Wellbutrin.

21. Tegretol is a medication that is used for treating epilepsy, bipolar disorder, and nerve pain.   In 2007, a well-known adverse effect of Tegretol was the development of Stevens-Johnson Syndrome and the more serious systemic toxic epidermal necrolysis.  Stevens-Johnson Syndrome is a hypersensitivity complex affecting the skin and mucous membranes.  The disorder causes blistering of mucous membranes, typically in the mouth, eyes, and patchy areas of rash. Toxic epidermal necrolysis presents with a similar blistering of mucous membranes, but with the entire epidermis peeling off in sheets from large areas of the body, and systemic effects.  Both disorders can be life threatening and need immediate treatment if signs or symptoms develop.  Tegretol was a new medication for Plaintiff in June 2007, and due to this fact and the known potential

for serious side effect, vigilance on the part of Plaintiff's medical care providers for potential side effects was necessary.

22. On information and belief, Plaintiff was given possession of his medications for self-administration, including Tegretol, with instructions for administration being provided by employees or agents of the Department of Corrections.

23. On the morning of 6/29/2007 Plaintiff signed up for sick call, reporting complaints of itchy, watery, reddened eyes for past several days, and clear nasal discharge. He was seen by MCF-SCL nursing staff Jane Doe 1, who documented his vital signs as: temperature 99.9, BP 144/94, heart rate 93, and respiratory rate 20. His eyes were documented to be very reddened.

24. Later in the evening of 6/29/07 at 2130, Plaintiff reported feeling hot, diaphoretic and shaky. His temperature was 101.5, BP 120/70, heart rate 120, respiratory rate 24. He reported he did not eat lunch or supper. MCF-SCL nursing staff Jane Doe 2 documented the following treatment plan: apply cool compress, administer Tylenol and planned for Plaintiff to lay-in and have breakfast in cell until evaluated by registered nurse the following morning. Plan was to recheck temperature.

25. The notes document that Plaintiff's temperature was rechecked by MCF-SCL nursing staff Jane Doe 3 on 6/29/07 at 2155, and was 101.5. Plaintiff's face was red and puffy, and he reported that his lips and throat felt swollen. Jane Doe 3 documented that Plaintiff was still talking and breathing easily. Benadryl 50 mg was administered, and on-call physician Dr. Aye was contacted.

26.  Defendant Dr. Aye ordered Zantac 300 mg, prednisone 60 mg, artificial tears, and 500 mg Cipro.  Sulfa eye drops were discontinued, and eyes were rinsed to remove any remaining sulfa from his eyes.

27.  Jane Doe 3 documented "assuming allergic (reaction) as he's also developed a rash over much of his torso."   No additional medical care or consultation documented.

28.  No night time medical care was documented.  No further medical care or Plaintiff assessment was documented until the following morning.

29.  The following morning, June 30, 2007 at 0800, Plaintiff was evaluated by MCF-SCL nursing staff, Jane Doe 4, for continuing concerns of allergic reaction.  His eyes were noted to be red, mattery and swollen, face rashy and swollen.  His tongue was noted to be swollen and blistered.  The rash was noted to cover Plaintiff's entire upper torso.  BP 118/82, heart rate 98, temperature 103.6, respiratory rate 14.  Plaintiff reported a swollen throat and difficulty breathing.  Defendant Jane Doe 4 documented Plaintiff had no difficulty talking and no objective signs of shortness of breath.

30.  Plaintiff was taken to Health Services, and was administered Benadryl 50 mg.

31.  Defendant Dr. Aye was called, and Prednisone 60 mg, Zantac 30 mg was ordered, with instructions to continue Cipro, a liquid diet, and repeat Benadryl in the afternoon or evening.  Jane Doe 4 documented, "Inmate given all of above and assured that it would get better- it would take time."  Plaintiff was returned to his cell.

32. At 0920 on 6/30/07 Plaintiff was checked again by MCF-SCL nursing staff Jane Doe 4. The swelling and rash were noted to continue to be present. His O2 saturations were 97%, temperature 102.6, heart rate 120, respiratory rate 16, BP 136/80. Plaintiff reported he did not feel any better. Jane Doe 4 documented, "Assured inmate that it would get better slowly."

33. At the next check of Plaintiff by Jane Doe 5 at 1220 on June 30, 2007, Plaintiff's temperature was 102. Jane Doe 5 documented that Plaintiff "firmly believes he needs to be sent out to local hospital, 'I'm getting worse.'" Jane Doe 5 documented Plaintiff was able to talk without difficulty, no respiratory difficulty was noted, and "no evidence of worsening of condition." Tylenol 325 mg x 3 tabs administered. Jane Doe 5 documented his/her plan to continue to monitor the situation.

34. At 1430 on June 30, 2007, Plaintiff called Defendants nursing staff to his cell to report shortness of breath, and to request to be taken to a hospital for further medical treatment.

35. Plaintiff was not taken to a hospital for medical care as requested for his reports of difficulty breathing and skin sloughing from his tongue.

36. Jane Doe 5 documented that Plaintiff was "yelling on gallery 38 and could be heard (at) the guard deck on gallery 33 (other side of house)." Jane Doe 5 assessed Plaintiff's condition as follows: "nail beds has (sic) good blanching (and) color. Was not in any resp(iratory) distress." BP 131/83, heart rate 123, temperature 101.8, O2 saturation 97%. Noted runny nose.

37.  Plaintiff requested to be taken to the hospital, to "have the dead skin cuff off his tongue." Jane Doe 5 recorded a comment by Plaintiff, "you guys are just making it worse." Benadryl was administered intramuscularly. Jane Doe 5 documented that he/she "shared (with) him that he was getting anxious but we would be checking on him."

38.  No documentation of further checks of Plaintiff by Jane Doe 5.

39.  The next check of Plaintiff occurred seven hours later at 2130 on June 30, 2007. Jane Doe 3 documented that a rash continued to persist over most of Plaintiff's torso, and was red and puffy. Aspirin and Benadryl were given orally. Plaintiff's breathing and speaking were noted to be without difficulty.

40.  Defendant Dr. Aye was consulted, and one week of prednisone and Benadryl was ordered.

41.  The next Progress Note, written the following morning, July 1, 2007 at 0615, notes that Plaintiff was found unresponsive in his cell approximately six hours later, and was taken to St. Cloud Hospital at 0300.

42.  Plaintiff was transported to St. Cloud Hospital emergently on 7/1/2007 at approximately 0300, after being found unresponsive in his cell.

43.  Plaintiff's fever upon arrival to St. Cloud Hospital was 105.4. He was found to have mucousal sloughing of his lips, mouth, airway, scrotum and axillary area.

44.  Plaintiff was also found to have airway edema, requiring intubation to maintain an open airway, and mechanical ventilation.

45.  Plaintiff's medical and medication records were not provided by Defendants to the emergency department physicians at St. Cloud Hospital. Plaintiff was not

able to give information about his medications, and the prison guards who accompanied Plaintiff to the hospital were not able to tell the physicians what medications Plaintiff was taking. Accordingly, Plaintiff's treating physicians at St. Cloud Hospital did not have complete medical information that was necessary for prompt and accurate medical treatment.

46. St. Cloud physicians documented their suspicion that Plaintiff was suffering from Stevens Johnson Syndrome or Toxic epidermal necrolysis syndrome (TENS) related to Tegretol use, but noted that they did not have Plaintiff's medication records to determine whether he was in fact taking Tegretol.

47. When Plaintiff was adequately stabilized, he was transported from St. Cloud Hospital to Hennepin County Medical Center, where he was admitted to the burn unit. It was quickly determined that he was suffering from Stevens-Johnson Syndrome and TENS as a result of Tegretol administration.

48. Plaintiff remained hospitalized at Hennepin County Medical Center for one month, from July 1, 2007, until his discharge to Oak Park Prison Hospital on July 30, 2007.

49. A late entry Medical Consult Note, dictated by Defendant nurse practitioner, Kathleen Konetzko, RN, CNP, on July 5, 2007 (originating from Minnesota Correctional Facility- Oak Park Heights "MCF-OPH"), documented that on June 29, 2007, she was stopped by a corrections nurse to discuss Plaintiff's medical condition. Ms Konetzko noted that Plaintiff signed up for sick call, and reported watery and crusty eyes. She examined and irrigated both eyes, noting clear drainage from both eyes. She diagnosed conjunctivitis, and prescribed

Sulfacetamide eye drops.  She told Plaintiff to sign sick call if it worsened.  Ms. Konetzko made no reference to the fact that Plaintiff was taking Tegretol, no reference to a rash or to a fever, and no documentation of assessment for adverse reaction to Tegretol.  There is no indication that Defendant Konetzko instructed Plaintiff to discontinue the self-administration of Tegretol.    Ms. Konetzko's note indicates that she placed Plaintiff on her list to be seen again that day (June 29, 2007), however there is no documentation to confirm that she saw Plaintiff in follow up at any time.

50.   As a result of the negligence of Defendants, by and through their agents and employees, Plaintiff Teddy Korf developed Stevens-Johnson Syndrome, and generalized TEN.

51.   As a result of the negligence of Defendants, by and through their agents and employees, there was a delay in diagnosis and treatment of Plaintiff's adverse reaction to Tegretol, resulting in severe and permanent injuries as a result of Stevens-Johnson Syndrome and generalized TEN.

52.   Plaintiff required acute inpatient care in the burn unit at Hennepin County Medical Center, and was hospitalized for 30 days.  Plaintiff's skin sloughed, and he suffered severe corneal abrasions to both eyes.

53.   Plaintiff has been left with permanent and chronic scarring of his corneas, which causes dryness of the eye, resulting in blindness, and chronic eye irritation and pain, and rendering him chronically and permanently disabled.

## CAUSES OF ACTION

Plaintiff supports the following claims by reference to previous paragraphs of the Complaint herein.

## FIRST CAUSE OF ACTION

### Violations of 42 U.S.C. § 1983
### Neglecting to Prevent

54.    Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 53 above with the same force and effect as if herein set forth.

55.    At all times relevant to this complaint, Kathleen Konetzko, RN, CNP; and Jane Doe 1-5 as employees of Minnesota Department of Corrections, were acting under the direction and control of Defendants Tom Roy, Commissioner, Minnesota Department of Corrections.

56.    Acting under color of law and pursuant to official policy or custom, Defendant Roy, knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Kathleen Konetzko; Jane Doe 1-3; and Ken Denman, RN, CNP, Dr. Aye, and Correctional Medical Service, Inc., in their duties to refrain from:

   a.    Engaging in a course of conduct which physically injured Plaintiff, to wit, the failure to provide adequate medical care;

   b.    Conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the State of Minnesota;

   c.    The deliberate indifference of Defendants, Tom Roy, Commissioner of the Department of Corrections; Jane Doe 1-3, Kathleen Konetzko, Ken Denman, Dr. Aye, and Correctional Medical Service, Inc., to Plaintiff's

serious medical needs from June 11, 2007 – July 1, 2007 deprived Plaintiff of his rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## SECOND CAUSE OF ACTION

**Against All Defendants in their Official Capacities**
**Violation of the Fourteenth Amendment of the United States Constitution**
**Actionable Pursuant to 42 U.S.C. § 1983**
**(Due Process)**

57.     Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations set forth in Paragraphs 1 through 56, above.

58.     Defendant's acts, omissions, policies and practices complained of herein are a substantial departure from accepted professional judgment, standards and practices, and institutional policies and procedures, constitute punishment, and reflect deliberate indifference to the known or obvious consequences to Plaintiff, including actual harm and pervasive risk of harm, and thereby unlawfully burden Plaintiff's protected liberty interest and violate Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

59.     Defendants' acts, omissions, policies and practices complained of herein have caused Plaintiff to suffer economic and non-economic damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**Against All Defendants in Their Official Capacities Violation of the Eighth**
**Amendment (as Incorporated by The Fourteenth Amendment) to the United States**
**Constitution, Actionable Pursuant to 42 U.S.C. § 1983**
**(Cruel and Unusual Punishment)**

60.     Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations set forth in Paragraphs 1 through 59 above.  Defendants'

16

acts, omissions, policies and practices complained of herein constitute cruel and unusual punishment and subjected Plaintiff to actual harm, to pervasive risk of harm and to other unlawful conditions in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

61.   Defendants' acts, omissions, policies and practices complained of herein have caused Plaintiff to suffer economic and non-economic damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

**Against All Defendants in Their Individual Capacities Violation of the Eighth Amendment (as Incorporated by The Fourteenth Amendment) to the United States Constitution, Actionable Pursuant to 42 U.S.C. § 1983 (Cruel and Unusual Punishment)**

62.   Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations as set forth in Paragraphs 1 through 61, above.

63.   As a direct, proximate result of Defendants' acts and omissions, Defendants have violated the basic human dignity of Plaintiff, and have abridged his right to be free from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## FIFTH CAUSE OF ACTION

**Violation of Eighth and Fourteenth Amendments Denial of Adequate Medical Care and Denial of Timely Access to Medical Care Affecting Physical and Mental Health**

64.   Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations as set forth in Paragraphs 1 through 63, above.

65.    Medication (Tegretol) was prescribed for Plaintiff without indication, thereby placing Plaintiff at significant risk for adverse reactions, including Stevens Johnson syndrome and TENS, in deliberate indifference of Plaintiff's health and safety.

66.    Plaintiff was denied timely access to medical care and evaluation. Symptoms of an adverse reaction to Tegretol, requiring immediate and urgent medical care, were not promptly recognized and appropriately treated, resulting in a greater than 48 hour delay in treatment of Stevens Johnson syndrome and TENS.

67.    Defendants' deliberate indifference to Plaintiff in serious need of medical care, by ordering medications without clinical indication, by denying medical care to patient, who exhibited objective and documented medical findings of illness highly suspicious for an adverse reaction to Tegretol (persistent fever, tachycardia, fever, rash, redness or skin, swelling of face) in addition to Plaintiff's reported difficulty breathing and report that the skin was sloughing from his tongue, in such a way as to cause acute pain, anxiety, and potentially serious physical and medical injury constitutes cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the United States Constitution. Defendants' actions have caused serious, unreasonable and permanent harm to Plaintiff's health.

## SIXTH CAUSE OF ACTION

**Failure to Adopt Policies and Procedures and Failure to Train and Supervise**

68.    Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations as set forth in Paragraphs 1 through 67, above.

69.   Defendants have failed to draft, to adopt and to implement governing policies and procedures necessary to protect inmates who require medical treatment for depression; or have emergency medical needs, and have failed to supervise or to train directors, administrators and staff and contract medical care providers despite an obvious need for such training and supervision and despite the fact that the injury to Plaintiff was a foreseeable complication caused by the medication prescribed by and administered to Plaintiff by Defendants.

70.   Despite the fact that Defendants prescribed and administered Tegretol to Plaintiff, and had knowledge of the known side effects of the medication, Defendants deliberately and callously disregarded Plaintiff's reported symptoms and objective signs highly suspicious for an adverse reaction, for more than 36 hours, and deliberately disregarded Plaintiff's serious medical symptoms and his request to be taken to a hospital for further medical care, thereby, failing to take reasonable steps to protect Plaintiff.

71.   When Plaintiff was taken to St. Cloud Hospital for emergency medical care, his medical history and medication history were not provided by Defendants to hospital personnel in violation of established policy, thereby further delaying diagnosis and treatment, and causing serious, unreasonable and permanent harm to Plaintiff's health.

## SEVENTH CAUSE OF ACTION

### State Tort Claim for Medical Negligence

72.   Defendants  Ken Denman, RN, CNP, Dr. Aye, and Correctional Medical Service, Inc., by and through their agents and employees, were negligent by providing

medical care to plaintiff Teddy Korf in a manner that deviated from accepted standards of medical practice under the circumstances.   Illustrations of said negligence, cited by way of example, but not by way of limitation, are as follows:

a.   Defendant Ken Denman ordered Tegretol for Plaintiff without appropriate indication for the medication.

b.   Defendant failed to adequately monitor Plaintiff for medication adverse reactions, and to take appropriate measures to treat plaintiff for adverse reactions.

c.   Defendant did not properly educate and inform Plaintiff regarding the side effects of medication that was prescribed, including Tegretol, and the actions he should take if symptoms of an adverse reaction were to occur, including discontinuing medication and immediately notifying staff.

d.   Defendant Khin Aye, M.D. failed to take appropriate measures to evaluate and treat Plaintiff for adverse reactions to Tegretol when consulted by MCF-SCL regarding plaintiff's symptoms on June 29 and June 30, 2007.

e.   Defendant acted or failed to act in other ways that deviated from accepted standards of practice under the circumstances.

## EIGHTH CAUSE OF ACTION

### State Tort Claim for Medical Negligence

73.   That from the date of his incarceration on June 4, 2007, through his transfer to a hospital for emergency medical treatment on July 1, 2007, employees of the Minnesota Department of Corrections were in control of the medical care and services provided to Plaintiff Teddy Korf, through its employees, agents and ostensible agents.

74.   Defendant, Tom Roy Commissioner of the Minnesota Department of Corrections, by and through his agents and employees, including Kathleen Konetzko, Jane Doe 1-5, and nursing staff at MCF-SCL, was negligent by providing medical care to plaintiff Teddy Korf in a manner that deviated from accepted standards of

medical practice under the circumstances.  Illustrations of said negligence, cited

by way of example, but not by way of limitation, are as follows:

a.  Defendant did not properly inform Plaintiff regarding the side effects of medication that was prescribed, including Tegretol, and the actions he should take if symptoms of an adverse reaction were to occur, including discontinuing the medication and immediately notifying staff.

b.  Defendant failed to adequately monitor Plaintiff for medication adverse reactions, and to take appropriate measures to treat Plaintiff for symptoms of adverse reactions.

c.  Defendant failed to take appropriate measures to care for and to treat Plaintiff for adverse reactions to Tegretol on June 29- 30, 2007.

d.  Defendant acted or failed to act in other ways that deviated from accepted standards of practice under the circumstances.

75.  As a direct and proximate result of the negligence of Defendants Plaintiff Teddy

Korf has been permanently injured in mind and body and has suffered damages

as follows:

a.  He has endured pain, discomfort and disability and will in the future endure pain, discomfort and disability.

b.  He has incurred medical and care expenses and will in the future incur medical and care expenses.

c.  He has incurred wage loss and will in the future incur wage loss.

d.  He had endured loss of earning capacity, and will in the future incur loss of earning capacity.

76.  He has been otherwise damaged.

77.  As a result of the negligence of Defendants, by and through their agents and

employees, Plaintiff Teddy Korf sustained severe bodily injuries; severe adverse

reaction to Tegretol medication, resulting in Stevens Johnson Syndrome, and

TEN, causing acute and life-threatening illness, and resulting in permanent and chronic corneal ulcers and pain and visual impairment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks for judgment against Defendants in an amount in excess of $75,000.00 for reasonable nominal, compensatory and punitive damages, as allowed by law, against each Defendant jointly and severally together with such other and further relief as this Court deems just, proper and equitable.

Dated:  June 6, 2011                    HALLBERG & McCLAIN, P.A.

                                        By: _____
                                            TERESA FARISS McCLAIN (ID 312873)
                                            380 St. Peter Street, Suite 715
                                            St. Paul, MN 55102
                                            Telephone:  651-255-6810
                                            Fax:  651-255-6820

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.21, Subdivision 2, to the party against whom the allegations in this pleading are asserted.

                                        HALLBERG & McCLAIN, P.A.

                                        BY: _____
                                            TERESA FARISS McCLAIN (ID 312873)
                                            Attorneys for Plaintiff
                                            380 St. Peter Street, Suite 715
                                            St. Paul, MN  55102
                                            651 255-6810